FRAWLEY CORPORATION, a California Corporation, Paper Mate Company, Inc., a California Corporation, Paper Mate Eastern, Inc., a New York Corporation, Plaintiffs,

v.

PENMASTER COMPANY, Inc., an Illinois Corporation, W. T. Grant Company, a Corporation, and Doe One, Defendants.

Civ. A. No. 53 C 2230.

United States District Court
N. D. Illinois, E. D.

Nov. 23, 1954.

Leo H. Arnstein, Burton Y. Weitzenfeld, Robert B. Simon and Lederer, Livingston, Kahn & Adsit, Chicago, Ill., and Louis Licht, Los Angeles, Cal., for plaintiffs.

Henry Junge, Barrett O'Hara, Jr., II, and Richard G. Bodenstab, Chicago, Ill., for defendant, Penmaster Co., Inc.

IGOE, District Judge.

This cause came on regularly for trial on June 22, 1954 and was heard before the undersigned, a Judge of the above entitled court, sitting without a jury. The cause was heard on June 22, 23 and 25, 1954. Burton Y. Weitzenfeld, Esq., Louis Licht, Esq. and Robert B. Simon, Esq. appeared as attorneys for plaintiffs. Henry Junge, Esq., Barrett O'Hara, Jr., II, Esq., and Richard G. Bodenstab, Esq., appeared as attorneys for defendant Penmaster Company, Inc. On plaintiffs' motion on March 24, 1954, defendant W. T. Grant Co. was heretofore dismissed as a defendant in this action. The court heard the testimony and examined the proofs offered by the respective parties, and the cause having been submitted to the court for decision, the court being fully advised in the premises, now makes its Findings of Fact and Conclusions of Law as follows:

## Findings of Fact

1. Plaintiff Frawley Corporation is and at all times since July 3, 1946, has been a corporation incorporated under and by virtue of the laws of the State of California. Plaintiff Paper Mate Company, Inc., is and at all times since March 13, 1952, has been a corporation incorporated under and by virtue of the laws of the State of California. Plaintiff Paper Mate Eastern, Inc., is and at all times since March 7, 1952, has been a corporation incorporated under and by virtue of the laws of the State of New York.

2. Plaintiffs and each of them are engaged in interstate commerce in the manufacture, distribution and sale of the Paper Mate deluxe pen, hereinafter described, which pen bears the trade-mark "Paper Mate."

3. Defendant Penmaster Company, Inc., is and at all times since November 1952, has been a corporation incorporated under and by virtue of the laws of the State of Illinois. Said defendant is engaged in interstate commerce in the distribution and sale of retractable ball point pens in competition with plaintiffs.

4. The matter in controversy exceeds in value the sum of Three Thousand ($3,000.00) Dollars, exclusive of interest and costs.

5. In June 1949 plaintiff Frawley Corporation commenced the manufacturing, sale and distribution of a retractable ball point pen with an instantly drying ink. Said pen (Pl. Ex. 25) was then the only pen on the market with such an ink.

6. Since June 1949 said pen and the pen hereinafter described in Finding 9 has been advertised by plaintiffs with and by the slogan and words "Bankers Approve".

7. Prior to the appearance on the market of such pen with an instantly drying ink, the retractable ball point pen market was in a depressed condition, the public had lost confidence in ball point pens, and there was little public acceptance of them. The banking and legal professions advised against the use of such pens and there was great public resistance to such pens.

8. By extensive promotion and advertising, plaintiffs obtained public recognition of the superior qualities of their pen and ink, and especially recognition and endorsement by bankers. The words and slogan "Bankers Approve" became and were and are now associated by the public with plaintiffs' product.

9. Between June 1949 and October 1951 plaintiff Frawley Corporation at considerable cost developed a second retractable ball point pen of unique, distinctive and attractive shape and appearance. Said pen is Plaintiffs' Exhibit 1 herein and is hereafter referred to as the Paper Mate deluxe pen.

10. The Paper Mate deluxe pen was and is unique and distinctive in that its general shape and appearance contain proportions and tapers which are attractive and which were not prior to its appearance and distribution in October 1951 contained in the shape or appearance of any retractable ball point pen theretofore on the market in this country, in that its general shape and appearance contain a collocation of features which is attractive and which was not previously contained in the shape and appearance of any retractable ball point pen theretofore on the market in this country, and in that it was and is of superior quality in its individual features and manner of operation, which quality was not previously contained in any retractable ball point pen theretofore on the market in this country. The features in the collocation hereinabove referred to include a metal, polished cap between a contrastingly colored plastic barrel and plunger, each (to wit, the cap, barrel and plunger) of harmonious proportions and tapers which are especially striking and pleasing when placed in proximity and juxtaposition with each other.

11. At all times since it was first manufactured and sold by plaintiffs, the Paper Mate deluxe pen has been manufactured by or for plaintiffs with great care and at great expense in the selection of materials of the highest quality and in the supervision of quality control in manufacture.

12. Since October 1951 plaintiffs have expended in excess of Six Million and No/100 ($6,000,000.00) Dollars in and for advertising of the Paper Mate deluxe pen. Plaintiffs' said advertising has appeared in every medium of communication, including newspaper, magazines, radio, television, display and transit advertising. Said advertising at all times since November 1951 has conspicuously featured the following features:

(a) The slogan and words "Bankers Approve";

(b) A picture of the Paper Mate deluxe pen;

(c) The retail price. $1.69;

(d) The slogan and words "no ink-stained hands or clothing";

(e) The slogan and words "Seventy thousand words without refilling".

13. The advertising referred to in Finding 12 has been nationwide, including Chicago and Illinois, and of great intensity. Said advertising has been of great intensity and effectiveness in promoting the sale of the Paper Mate deluxe pen and in the creation of recognition by the pen trade and by the public of the shape and appearance of the Paper Mate deluxe pen as signifying the plaintiffs as the source of said pen and in the creation of an association in the minds of the public of the retail price of $1.69 and of the slogan "Bankers Approve" with the plaintiffs and with the plaintiffs' said pen.

14. Approximately thirty-million (30,-000,000) Paper Mate deluxe pens have been sold since October 1951, all but the first six weeks' sales being advertised and sold at the retail price of $1.69. Approximately Seven and one-half million (7,500,000) Paper Mate deluxe pens had been sold by October 1952, including large numbers in Chicago and Illinois and in the neighboring mid-western states of the United States. Sales and advertising in Chicago, in Illinois and in said states commenced in 1951 and were and have been continuous and of great intensity thereafter to the present time, and still continue in great intensity and still continue to increase.

15. The extensive advertising, the great volume of sales, and the prompt and favorable trade and public acceptance of plaintiffs' pen hereinabove referred to created in favor of plaintiffs a secondary meaning in the unique and distinctive shape and appearance of the Paper Mate deluxe pen and in the retail price $1.69 associated therewith and in the slogan "Bankers Approve" associated therewith; and each of these features of plaintiffs' product and advertising has become associated by the trade and public with a retractable ball point pen of superior quality emanating from the plaintiffs; and the plaintiffs have acquired a good will of great value in each and every of said features. Said secondary meanings have been continuous at least since October 1952 and now exist in plaintiffs' favor.

16. In or about October or November 1952, and after the creation of the secondary meanings above described in favor of plaintiffs, defendant Penmaster Company, Inc., commenced the assembly, distribution and sale in Chicago, in Illinois, and in the neighboring mid-western states of the United States of a retractable ball point pen. Said pen was and is sold with the words or letters "Penmaster" or "Made in U.S.A." stamped on the clip thereof. Said words and said clip are an insignificant feature or part of said pen. Said pen is hereinafter referred to as "defendant's pen".

17. Defendant's pen so closely simulates the unique and distinctive shape and appearance of plaintiffs' Paper Mate deluxe pen as to be substantially an exact copy thereof. Defendant's pen is indistinguishable from plaintiffs' Paper Mate deluxe pen except upon the closest physical inspection. Defendant's pen is so confusingly similar in shape and appearance to plaintiffs' Paper Mate deluxe pen that large numbers of the public have been and are being confused as to the source of defendant's pen and have believed and do believe that said pen is plaintiffs' Paper Mate deluxe pen and that said pen is one which emanates from the plaintiffs.

18. Defendant's pen was and is inferior in quality and construction to plaintiffs' Paper Mate deluxe pen, in the finish of the pens, the quality of the component parts, the quality of ink, and the care of manufacture and assembly.

19. Defendant's pen has never been offered or sold to the public at the price of $1.69 or at any other price in excess of $1.00. Nevertheless, defendant's advertisements have conspicuously featured phrases such as "Regularly $1.69 in the stores", "Advertised in newspapers and

magazines at $1.69", and "Regular $1.-69", and "Our direct from factory price of $1.00." Defendant's printed advertisements have also conspicuously featured a picture of a retractable ball point pen, described therein as a retractable ball point pen, with the picture so placed that the imprinting on the clip of the pen may not be read or distinguished by the reader, which picture is indistinguishable from a picture of a Paper Mate deluxe pen similarly placed. Defendant's advertisements have also conspicuously featured phrases identical to or substantially similar to "Bankers Approve".

20. Defendant has received orders for plaintiffs' Paper Mate deluxe pen, and has filled said orders with its own pen.

21. Defendant has caused its pen to closely simulate the shape and appearance of plaintiffs' Paper Mate deluxe pen, as above described in Finding 17, and has caused its advertising closely to simulate the advertising of plaintiffs and various features thereof, as above described in Finding 19. It has palmed off its pen as above described in Findings 17, 19 and 20, with the intent to deceive and defraud the public into believing that its pen was and is plaintiffs' genuine Paper Mate deluxe pen and to induce the public to purchase its pen in the belief that they were and are purchasing plaintiffs' genuine Paper Mate deluxe pen. This defendant has preyed on and profited from plaintiffs' good will and superior reputation.

22. Large numbers of the public have been confused, deceived and misled by the acts of the defendant as above described and have thereby been induced to purchase the defendant's inferior pen in the belief that they were purchasing at a special bargain price plaintiffs' superior quality Paper Mate deluxe pen, all to plaintiffs' damage. Approximately One Hundred Twenty Thousand (120,000) to One Hundred Thirty Thousand (130,000) of defendant's pens have been sold by defendant.

23. Plaintiffs duly notified defendant in writing in August 1953 complaining of its acts as above described and requesting discontinuance thereof, but defendant has refused to discontinue said acts and is continuing said acts and threatens further to continue said acts, all to the loss and damage of plaintiffs.

From the foregoing the Court concludes:

### Conclusions of Law

1. This Court has jurisdiction under the provisions of 28 U.S.C. §§ 1332(a)(1), 1338(b), 15 U.S.C. §§ 1051–1127.

2. A secondary meaning in the shape and appearance of plaintiffs' Paper Mate deluxe pen as designating a product which emanates from plaintiffs exists, and plaintiffs are entitled to protection thereof.

3. A secondary meaning in the following advertising features also exists as designating and associated with a product which emanates from plaintiffs, and plaintiffs are entitled to protection thereof:

(a) the slogan and words "Bankers Approve" and any colorable imitation thereof;

(b) the retail price $1.69;

(c) a picture of a retractable ball point pen of the shape and appearance of plaintiffs' Paper Mate deluxe pen.

4. Defendant has been guilty of unfair competition in the assembly, distribution and sale of its retractable ball point pen, by fraudulent and deliberate simulation and appropriation of the shape and appearance of plaintiffs' Paper Mate deluxe pen and of the features above described in which a secondary meaning in favor of plaintiffs exists.

5. Plaintiffs and each of them have been damaged in their good will, reputation and sales by defendant's unfair competition, but the amount of plaintiffs' damage is indeterminate and uncertain. Plaintiffs will continue to be damaged unless defendant is restrained and enjoined from the unfair competition above referred to.

6. Plaintiffs and each of them are entitled to a judgment herein enjoining said unfair competition and awarding plaintiffs their costs and reasonable attorneys fees as damages.

Let Judgment Be Entered Accordingly.

### Final Decree

This cause having come on regularly for trial on June 22, 1954 and having been heard before the undersigned, sitting without a jury; the Court having considered the pleadings filed herein, the testimony of witnesses taken in open court and by deposition, the exhibits received in evidence, the briefs filed by the parties hereto and the Court having heretofore entered its Findings of Fact and Conclusions of Law, it is hereby

Ordered, Adjudged and Decreed:

That defendant, Penmaster Company, Inc., its officers, directors, agents, servants and employees be and they are hereby permanently enjoined from directly or indirectly,

(a) assembling, manufacturing, promoting, advertising, offering for sale or selling a retractable ball point pen of a shape or appearance identical with or deceptively similar to that of plaintiffs' Paper Mate DeLuxe Model Pen.

(b) utilizing the price of One Dollar and Sixty-nine Cents ($1.69) in connection with the advertising, promoting, offering for sale or sale of a retractable ball point pen identical with or deceptively similar to the shape and appearance of the plaintiffs' Paper Mate DeLuxe Model Pen,

(c) utilizing the phrase "Bankers Approve" in connection with the advertising, offering for sale, promotion or sale of writing instruments,

(d) doing anything having the effect of representing to the public that any product manufactured, assembled, promoted, advertised or sold by defendant emanates from plaintiff.

It is further ordered, adjudged and decreed that defendant Penmaster Company, Inc., deliver into the custody of the Clerk of this Court, on or before the 15th day of December, 1954, for destruction, any and all ball point pens deceptively similar to the plaintiffs' Paper Mate DeLuxe Model and all advertising matter of any kinds or descriptions, including pamphlets, flyers, brochures, newspaper advertisements, radio scripts and phonograph records, together with the plates, mats and the like used in the production of any and all such advertising material containing the slogan "Bankers Approve" in connection with the promotion of any writing instrument or $1.69 in connection with the promotion of any ball point pen of a shape and appearance deceptively similar to that of plaintiffs' Paper Mate DeLuxe Pen.

It is further ordered, adjudged and decreed that this cause be and it is hereby set for hearing at 2:00 on Dec. 3, 1954 for the purpose of receiving evidence respecting the amount of attorney's fees due plaintiffs from defendant.

The Clerk of Court will enter judgment accordingly.